UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re

    ENERGY MANAGEMENT TECHNOLOGIES, LLC,
    d/b/a EMTECH,

                                                    Debtor.

Chapter 11
Case No. 10-11779

## APPLICATION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §361 and §363 AND BANKRUPTCY RULE 4001(b)(2) PENDING PRELIMINARY HEARING

Debtor and Debtor-in-Possession, ENERGY MANAGEMENT TECHNOLOGIES, LLC, d/b/a EMTech, ("Debtor") states as follows:

    1.    On May 7, 2010, ("Petition Date"), Debtor filed its Petition for relief under Chapter 11 of Title 11 (the "Code"), United States Code with the United States Bankruptcy Court for the Northern District of New York ("Court") and is a debtor and debtor-in-possession pursuant to 11 U.S.C. §1107 and 1108 of the Code.

    2.    The Debtor operates a heating, ventilation and air-conditioning contracting business. The Debtor operates from property located at 405 Front Street, 2nd Floor, Schenectady, New York 12305.

    3.    M&T Bank ("M&T") holds a first-priority security interest in substantially all of the Debtor's assets, including its cash, accounts and accounts receivable (the "Collateral") pursuant to the terms of its UCC-1 financing statement filed with the Office of the New York State Secretary of State on August 7, 2008

    4.    The filing of the Debtor's petition was necessitated by ESCO, Inc., a creditor, obtaining a judgment against the Debtor in the amount of $650,698.70 in an action brought in New

York State Supreme Court, Albany County, and executing on that judgment almost immediately upon the filing of the judgment.

5. Pursuant to the within motion under 11 U.S.C. §§361 and 363, the Debtor requests that it be permitted to use the cash collateral which is otherwise allegedly security for M&T Bank's debt, to provide adequate protection for M&T Bank's interest in the Collateral to the same extent and priority as it had pre-petition and, pursuant to Bankruptcy Rule 4001(b)(2), that preliminary and final hearings be immediately scheduled on its application for use of cash collateral during the pendency of this case.

6. In addition, in order to avoid immediate and irreparable harm to Debtor's estate pending the preliminary hearing, Debtor requests authorization of this Court pursuant to Bankruptcy Rule 4001(b)(2) to use cash collateral pending the preliminary hearing.

7. In order to avoid irreparable harm to Debtor's estate, the payments noted in the accompanying affidavit of Bernard Santandrea, a member of the Debtor are necessary for Debtor to continue operations through the preliminary hearing.

8. As a result a total of $72,286.05 is necessary for the Debtor to operate pending the preliminary hearing. The Debtor estimates receipts in the approximate amount of $69,261.54 over the next succeeding ten day period. In addition, the Debtor has deposits on hand of $205,621.99 as of the filing date of the Debtor's petition. The Debtor's proposed budget reflecting product revenue and expenditures for the ten (10) days following the filing of the petition is attached hereto as Exhibit "A".

9. The Debtor proposes to grant M&T Bank a rollover lien on all pre-petition collateral and to maintain its security interest in the Collateral to the same extent and priority as it held prior to the filing of the Debtor's petition until the conclusion of the preliminary hearing as provided for

herein. The proposed adequate protection liens would be deemed valid and perfected to the extent of M&T Bank's pre-petition perfection as of the date of the approval of the instant motion by the Court, without the need for execution or filing of any further documents or instruments that would otherwise be required pursuant to applicable non-bankruptcy law.

10. In light of the actions taken by ESCO, Inc. to execute on its judgment, including attempts to restrain and execute on the Debtor's bank accounts and collect receivables from the Debtor's customers and the need to devote the efforts of counsel to preparing the necessary documents for the Debtor's filing, it was not feasible to negotiate with and obtain the consent of M&T Bank for the use of cash collateral. Counsel for the Debtor did contract Louis Levine, Esq., counsel for M&T Bank, advised him of the filing and the basis therefore and provided him with a proposed budget. M&T Bank has not yet been able to respond to the proposed stipulation. However, given the enforcement efforts by ESCO, Inc., the Debtor has no choice but to file its petition and make the within requested relief pending further discussions with M&T Bank's counsel. The Debtor is ready, willing and able to negotiate terms for the use of cash collateral with M&T Bank and to enter into such reasonable terms as agreed upon by the parties.

11. It is respectfully submitted that, given the nature of the Debtor's business, any interruption in its ability to use its cash to operate would have an immediate and adverse effect on the value of the business as a going concern. The Debtor has a number of on-going projects and interruption in its cash flow would cause it to default on those jobs and have an immediate effect on the Debtor's ability to pay its employees. Accordingly, the Debtor must have immediate access to and use of its cash to pay its necessary operating expenses while the preliminary and final hearings on the within application are pending.

12. As of May 5, 2010, the Debtor had total assets, including cash, accounts receivable, inventory, equipment and goodwill in the amount of $1,371,048.50. The Debtor proposes that M&T's priority interest remains in place to the same extent and priority as it was pre-petition pending completion of the preliminary hearing.

13. A copy of the Debtor's proposed budget is attached to the accompanying affidavit of Bernard Santandrea, a member of the Debtor's managing member, in support of the within application.

**WHEREFORE**, the Debtor respectfully requests an Order of this Court authorizing Debtor to immediately use cash collateral in an amount not to exceed $72,286.05, as set forth in the accompanying budget, pending the preliminary hearing.

**Dated:** May 7, 2010
Albany, New York

**NOLAN & HELLER, LLP**
*Attorneys for Debtor*

By: _____
Francis J. Brennan, Esq.
39 North Pearl Street, 3rd Floor
Albany, New York 12207
(518) 449-3300

75774-1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re

    ENERGY MANAGEMENT TECHNOLOGIES, LLC,
    d/b/a EMTECH,

                                Debtor.

Chapter 11
Case No. 10-11779

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§361 AND 363 AND BANKRUPTCY RULE 4001(b)(2) PENDING PRELIMINARY HEARING

STATE OF NEW YORK    )
                              : ss.:
COUNTY OF ALBANY    )

    **BERNARD SANTANDREA**, being duly sworn, deposes and says:

    1.    I am a member of the Debtor and Debtor-in-Possession herein ("EMTech"), and am familiar with the matters set forth herein. I make this affidavit in support of the Debtor's motion for an order authorizing the interim use of cash collateral and to provide adequate protection to M&T Bank, the Debtor's secured creditor herein.

    2.    The Debtor operates a heating, ventilation and air-conditioning contracting business. The Debtor operates from property located at 405 Front Street, 2nd Floor, Schenectady, New York 12305.

    3.    M&T Bank holds a security interest in substantially all of the Debtor's assets, including its inventory, cash, accounts and accounts receivable (collectively, the "Collateral") and is owed approximately $48,764.68 on account of a line of credit extended by M&T Bank to the Debtor. In addition, the Debtor is obligated to M&T Bank on a term loan with a balance of approximately

$17,038.67. Further, there are several vehicle loans with M&T Bank. Upon information and belief, all of the M&T loans are cross-collateralized.

4.  I am advised by the Debtor's counsel that a final hearing on the within application before the Court cannot be commenced on less than 21 days' notice. In order to avoid irreparable harm to the Debtor and, in particular, to its customers and employees and to preserve the going concern value of the Debtor's business, the expenses noted on Exhibit "A" must be paid prior to the time when the Court can schedule a hearing on the within application.

5.  As of May 6, 2010, the Debtor had total assets, including cash, accounts receivable, inventory, equipment and goodwill in the amount of $1,371,043.50. The Debtor proposes that M&T Bank's priority interest remain in place to the same extent and priority as it was pre-petition pending completion of the preliminary hearing for the Debtor to operate pending the preliminary hearing.

6.  The Debtor proposes to grant M&T Bank rollover liens on all pre-petition collateral, including accounts receivable and to maintain M&T Bank's security interests in the Collateral to the same extent and priority as it held prior to the filing of the Debtor's petition. The proposed adequate protection liens would be deemed valid and perfected to the same extent M&T Bank's security interest was perfected pre-petition as of the date of the approval of the instant motion by the Court, without the need for execution or filing of any further documents or instruments that would otherwise be required pursuant to applicable non-bankruptcy law and such rollover liens would continue until completion of the preliminary hearing on the Debtor's within application.

7.  The filing of the Debtor's petition was necessitated by ESCO, Inc. obtaining a money judgment against the Debtor in the amount of $650,698.70 on May 3, 2010 and its attempts to execute on such judgment by serving restraining notices against the Debtor, its depository bank and its accounts receivable immediately upon entry of the judgment.

8. In light of the attempts by ESCO, Inc. to execute on its judgment, it was not feasible to negotiate with and obtain the consent of M&T Bank for the use of cash collateral. Nevertheless, the Debtor is ready, willing and able to negotiate terms for the use of cash collateral with M&T Bank and to enter into such reasonable terms as agreed upon by the parties, as well as to resolve the issue of the bank's perfection of its security interest.

9. The Debtor's counsel has explained to me that the Debtor can be permitted to use its cash to fund its operations, either with the consent of the secured creditor or by order of the Court. As of May 6, 2010, the Debtor had total assets, including cash, accounts receivable, inventory, equipment and goodwill in the approximate amount of $1,371,043.50. The Debtor proposes that M&T Bank's priority interest remains in place to the same extent and priority as it was pre-petition pending completion of the preliminary hearing.

10. Further, the Debtor has prepared a budget that represents the anticipated income and expenses of the Debtor through the first ten days of the post-petition period as well as for the immediately succeeding 30 day period following the filing of the petition.

11. The Debtor does not have sufficient available sources of working capital to carry on the operation of its business without the use of M&T Bank's cash collateral. The Debtor's ability to maintain its business relationships with its vendors, suppliers and customers, to pay payroll and other direct operating expenses and to otherwise finance its operations is essential to its continued viability and, more importantly, to the preservation of its going concern value for the benefit of its creditors. Absent this court's authorization for the use of cash collateral, the continued operation of the Debtor's business would not be possible and serious and irreparable harm to the Debtor, its estate, employees, customers and creditors would occur. The preservation of the Debtor's estate and the going concern value of the Debtor are absolutely essential to attempt to obtain a meaningful recovery

for creditors. The Debtor has a number of on-going projects and interruption in its cash flow would cause it to default on those jobs and have an immediate effect on the Debtor's ability to pay its employees. Accordingly, the Debtor must have immediate access to and use of its cash to pay its necessary operating expenses while the preliminary and final hearings on the within application are pending.

12. The Debtor believes that the terms of the proposed adequate protection arrangements are fair and reasonable and reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties.

13. The Debtor requests immediate entry of an Order pursuant to Federal Rule of Bankruptcy Procedure 4001(b)(2). The Debtor's ability to use cash collateral is necessary to avoid immediate irreparable harm to the Debtor and is in the best interests of the Debtor's estate and its creditors and the entry of the requested order will permit the Debtor to fund its continued operation and enhance the Debtor's prospects for a meaningful recovery for its creditors. The Debtor requests the continued use of M&T Bank's cash collateral through a final hearing on the within application and thereafter pursuant to any further order of this Court or stipulations between the parties for use of cash collateral.

WHEREFORE, Debtor respectfully requests an Order of this Court approving the proposed budget and authorizing Debtor to immediately use cash collateral as set forth in the within application pending a preliminary hearing on the within application.

                                        Bernard Santandrea
                                        Member and President

Sworn to before me this
7th day of May, 2010

_____
Notary Public, State of New York

75774

FRANCIS J. BRENNAN
Notary Public, State of New York
No. 12BR6050918
Qualified in Schenectady County
Commission Expires 11-13-20 10

# EXHIBIT "A"

| Expense | Weekly | Cost Per Month | Monthly Divided by 4.5 weeks | 2 Weeks Expense / 7-10 Days |
|---|---|---|---|---|
| Rent | | $ 2,703.32 | $ 600.74 | $ 2,703.32 |
| 405-Utilities | | $ 550.25 | $ 122.28 | $ 550.25 |
| Time Warner | | $ 189.00 | $ 42.00 | $ 189.00 |
| Corner Stone Phone | | $ 185.00 | $ 41.11 | $ 185.00 |
| Waste Removal | | $ 97.20 | $ 21.60 | $ 97.20 |
| Cleaning Srv. | | $ 245.70 | $ 54.60 | $ 245.70 |
| Cell Phones | | $ 1,200.00 | $ 266.67 | $ 1,200.00 |
| Amex- Credit Card Corp Chrgs | | $ 20,000.00 | $ 4,444.44 | $ 8,888.89 |
| Gas / Materials/ UPS/Printing- Auto R & M-Tolls | | | | |
| Equipment Rentals- Copier | | $ 162.54 | $ 36.12 | $ 162.54 |
| Postage Machine & postage | | $ 80.27 | $ 17.84 | $ 80.27 |
| Merchants Insurance | | $ 4,300.00 | | $ 4,300.00 |
| Merchants Insurance- WCA | | | | $ 1,756.00 |
| | | | | |
| Payroll | $ 20,513.00 | | | $ 41,026.00 |
| Union Dues | $ 1,700.00 | | $ - | $ 3,400.00 |
| NPA | $ 26.00 | | $ - | $ 52.00 |
| MCAA | $ 21.00 | | $ - | $ 42.00 |
| TD/ Simple IRA | $ 1,250.00 | | $ - | $ 2,500.00 |
| CDPHP | | $ 4,181.19 | | |
| Aflac | | $ 292.00 | $ 64.89 | $ 292.00 |
| Wolfpack | | $ 82.14 | $ 18.25 | $ 82.14 |
| Aflac & Wolfpack-Employee weekly P/R Deduct pass through pd per month | | | | |
| Mass Mutual- Life Auto withdrawal | | $ 328.56 | | $ 328.56 |
| Paychex Fee | | $ 385.00 | | |
| Auto & Business loans | | | | |
| Ford Credit-2005-F150 | | $ 419.39 | | $ 419.39 |
| Ford- 2007 E 250 | | $ 469.59 | | $ 469.59 |
| Ford-2006- F150 | | $ 378.59 | | $ 378.59 |
| Ford- Fushion | | $ 341.59 | | $ 341.59 |
| Citizens | | $ 361.83 | | $ 361.83 |
| Gmac | | $ 908.69 | | $ 908.69 |
| 1st National | | $ 505.79 | | $ 505.79 |
| M T LOC Payment | | | $ 639.71 | $ 639.71 |
| M & T - LOC -loan Installment Payment | | | $ 180.00 | $ 180.00 |
| | | | | |
| Income/ Bank Deposits | | | | $ 72,286.05 |
| Jan-10 | | $ 138,052.00 | | |
| Feb | | $ 263,050.00 | | |
| Mar-10 | | $ 293,373.00 | | |
| | | | | |
| Avg Per Month | | $ 231,491.67 | | |